FILED
SUPERIOR COURT
OF GUAM

2023 JAN -3 PM 4: 24

CLERK OF COURT

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| THE PEOPLE OF GUAM,<br><br>vs.<br><br>NICHOLAS WAYNE MOORE,<br>Defendant. | Case No. CF0313-21<br><br>**DECISION AND ORDER**<br>(Defendant's *Ex Parte* Motion for a Mistrial and Defendant's *Ex Parte* Motion to Compel Production of All Discovery Relating to Brian Mendiola's Plea Agreement and Immunity Negotiations) |

## INTRODUCTION

This matter came before the Honorable Alberto E. Tolentino on Nicholas Wayne Moore's ("Defendant") *Ex Parte* Motion for a Mistrial ("Motion for a Mistrial") and Defendant's *Ex Parte* Motion to Compel Production of All Discovery Relating to Brian Mendiola's Plea Agreement and Immunity Negotiations ("Motion to Compel"). Attorneys David J. Lujan, William L. Gavras, and Michael F. Phillips represent Defendant. Assistant Attorneys General Grant A. Olan and Sean E. Brown represent the People of Guam ("People"). Having considered the arguments and applicable law, the Court hereby **DENIES** Defendant's Motion for a Mistrial and **DENIES** Defendant's Motion to Compel.

## BACKGROUND

Trial in this case is proceeding upon an amended superseding indictment on the following charges: (1) Two Counts of Aggravated Assault (As a Second Degree Felony) with

Two Counts of the Special Allegation: Deadly Weapon Used in the Commission of a Felony; (2) Terrorizing (As a Third Degree Felony) with the Special Allegation: Deadly Weapon Used in the Commission of a Felony; and (3) Possession of an Unregistered Firearm (As a Third Degree Felony). Am. Superseding Indictment, June 13, 2022. Jury selection commenced on June 15, 2022, and a petit jury was sworn in on August 11, 2022. Minute Entry, June 15, 2022; Minute Entry, Aug. 11, 2022.

During a side bar between the Court and the parties on November 9, 2022, defense counsel indicated that they had some issues they would like to brief. On November 10, 2022, the Court issued CR 1.1 Form Notice of Hearing and Submission on the Briefs ("CR 1.1"), which provided a briefing schedule for the issues defense counsel brought up on November 9, 2022. CR 1.1, Nov. 10, 2022. Defendant filed both Motion for a Mistrial and Motion to Compel. Def.'s *Ex Parte* Mot. for a Mistrial, Nov. 23, 2022; Def.'s *Ex Parte* Mot. to Compel Production of All Discovery Relating to Brian Mendiola's Plea Agreement and Immunity Negotiations, Nov. 23, 2022. The People filed an opposition. People's Opp'n. to Def.'s Mot. for a Mistrial and Mot. to Compel Discovery, Dec. 2, 2022 (hereinafter "People's Opp'n."). Defendant filed Defendant's Position Regarding Prosecution's Failure to Comply with Court's Order ("Defendant's Position"). Def.'s Position Regarding Prosecution's Failure to Comply with Court's Order, Dec. 7, 2022.

Pursuant to the Local Rules of the Superior Court of Guam ("CVR") 7.1(e), "[o]ral argument may be denied in the discretion of the judge, except where oral argument is required by statute or the Guam Rules of Civil Procedure." Upon review of the filings, the Court determines that oral argument is not necessary and denies oral argument on the motion. The

Court now issues the following decision and order. The decision and order addresses both Motion for a Mistrial and Motion to Compel.

## DISCUSSION

Defendant accuses the People of a series of discovery violations relating to Brian Mendiola's ("Mendiola") testimony and requests the Court either compel the People to disclose discoverable documents or order a mistrial. Defendant also states his position regarding the People's late failure to follow the Court's briefing schedule. The Court addresses each of Defendant's claims contained in the two motions below.

### A. The People filed its opposition after the deadline in the Court's briefing schedule.

Defendant argues the Court should not consider the People's Opposition because the People filed it after the deadline the Court set for opposition in CR 1.1. Def.'s Position at 1–2. Defendant is correct that People's Opposition was filed late; CR 1.1 required the People file their opposition by close of business November 30, 2022, and the People filed its response on December 2, 2022. CR 1.1; People's Opp'n.

CVR 7.1(f) states "[p]apers not timely filed by a party including any memoranda or other papers required to be filed under this Rule shall not be considered without leave of Court." The Court did not grant leave for the late filing of the People's opposition. Accordingly, in analyzing the issues and preparing this decision and order, the Court did not consider the People opposition and considered only Motion for Mistrial, Motion to Compel, and the record.

## B. The Court finds no discovery violations regarding Mendiola's immunity agreement, plea agreement, or otherwise.

During cross-examination on November 1, 2022, Mendiola asked "am I incriminating myself?" after admitting he was not completely truthful during his first police interview. Digital Recording at 2:13:18–3:28:37 (Jury Trial, Nov. 1, 2022). The Court excused the jury and then requested the Alternate Public Defender ("APD")—who represents Mendiola in an unrelated case—be present in the courtroom. *Id.* After lengthy discussion with the parties and APD off of the record, the Court appointed APD to represent Mendiola in this case and advise him of his Fifth Amendment rights regarding potential self-incrimination during cross-examination. *Id.* The Court adjourned in order to give Mendiola time to consult with APD. *Id.* Trial resumed on November 3, 2022, and the People and APD represented that they had reached an immunity agreement but that it was not yet reduced to writing. Digital Recording at 11:03:20–1:11:20 (Jury Trial, Nov. 3, 2022). The Court adjourned to allow the People and APD to draft a written immunity agreement and to allow defense counsel time to brief some concerns they had about the immunity agreement. *Id.* Defense counsel never filed a brief regarding the immunity agreement. On November 9, 2022, trial resumed and APD informed the Court that Mendiola was ready to move forward with his testimony. Digital Recording at 10:16:22–12:36:57 (Jury Trial, Nov. 9, 2022). The People provided the Court with a copy of the agreement, which Defendant already possessed. *Id.* Defendant expressed concern with the immunity agreement, which grants Mendiola transactional immunity, and requested some time to brief an opposition to the immunity agreement. Digital Recording at 10:16:22–3:07:03 (Jury Trial, Nov. 9, 2022).

**1. The delay in Mendiola waiving his Fifth Amendment rights is attributed to Defendant.**

Defendant argues the Court erred "when stopping trial for an extended period of time when Mendiola made clear for a second time he was not prepared to waive his Fifth Amendment rights." Motion for a Mistrial at 1. On November 9, 2022, APD stated, "I have presented [the immunity agreement] to Mr. Mendiola and he is comfortable with moving forward." Digital Recording at 10:16:22–10:20:37 (Jury Trial, Nov. 9, 2022). The Court interprets this statement—coupled with the signed letter from the People outlining immunity for Mendiola—to indicate that Mendiola was prepared to waive his Fifth Amendment rights on November 9, 2022.

Second, it was the Court's intention to finish Mendiola's cross-examination before adjourning for two months, and the Court believes defense counsel could have finished cross-examination of Mendiola or at least made significant progress if defense counsel had not refused to conduct cross-examination that day. The Court and the People were prepared for Mendiola to waive his Fifth Amendment rights on November 9, 2022. Defense counsel informed the Court they were not prepared to conduct cross-examination and that they were under the impression no cross-examination would occur that day but that instead the Court would discuss scheduling with the jury. Digital Recording at 12:22:43–12:36:57 (Jury Trial, Nov. 9, 2022). Attorney Lujan then stated he "wouldn't hesitate" to go to jail should the Court hold him in contempt for failing to conduct cross-examination. *Id.* Moreover, defense counsel was adamant about needing additional time to brief the issue of transactional immunity before Mendiola waived his Fifth Amendment rights, including stating "it would be a very bad situation for the Court to say let's just roll on for another day or two and see what happens." Digital Recording at 10:16:22–12:36:57 (Jury Trial, Nov. 9, 2022). Lastly, Attorney Lujan

stated in a side bar discussion on November 9, 2022, that the Court must pause trial because he thought that he may need to withdraw from representation due to a potential conflict of interest and he wished to consult off-island counsel about the potential conflict. The Court notes that it instructed Attorney Lujan to file a brief explaining his basis for withdrawal, and Attorney Lujan never did. Digital Recording at 03:04:08–03:07:12 (Jury Trial, Nov. 9, 2022). Therefore, it is disingenuous of Defendant to state that the Court erred in stopping trial prior to Mendiola waiving his Fifth Amendment rights when the reason Mendiola did not have an opportunity to do so is because defense counsel insisted that the Court delay Mendiola's waiver of his Fifth Amendment rights for the above reasons.

**2. The People have not improperly influenced Mendiola and have not improperly communicated with Mendiola.**

Defendant asserts that the People are improperly influencing Mendiola's testimony by offering him transactional immunity. Motion for a Mistrial at 2–5. The Court finds nothing in the record indicating that the People had improper communication with Mendiola. The Court first notes that the People state that the plea negotiations in Mendiola's burglary case do not contain a cooperation term for this case. Digital Recording at 10:16:22–12:36:57 (Jury Trial, Nov. 9, 2022). The People have stated that they have not participated in plea negotiations for the burglary case with APD while Mendiola has been a witness in this case. *Id.* The Court finds no reason that the People would be untruthful regarding any statements it has made surrounding Mendiola's burglary case. As a result, Defendant's claims that the People offered Mendiola a favorable plea in the burglary case and that the People are engaging in improper plea negotiations are unfounded.

Mendiola expressed concern about self-incrimination following the conclusion of direct examination and midway through cross-examination. Once Mendiola stated he believed answering the questions posed by defense counsel would incriminate himself, the Court could not force Mendiola to waive his Fifth Amendment rights unless the People granted Mendiola immunity. *See generally Kastigar v. United States*, 406 U.S. 441, 445–49 (stating a court may not compel a witness who is asserting their Fifth Amendment rights against compulsory self-incrimination to testify unless he has been granted immunity from prosecution). The Court encouraged Mendiola to consult with counsel, and Mendiola did so. Ideally, Court and the parties would have foreseen that self-incrimination could be a potential issue for this witness and would have addressed the issue before any testimony occurred. Unfortunately, that did not happen, and the only opportunity for the People to negotiate an immunity agreement with Mendiola was while he was in the middle of his testimony. Defendant states "[d]eals like these popping up during cross-examination are not the norm nor are they authorized or legitimate." Mot. for Mistrial at 3. Defendant does not cite any authority for this contention, and the Court finds none. Additionally, the Court cannot conceive of a different procedure the People could have used to grant Mendiola immunity, and the Court believes the People should have the opportunity to grant Mendiola immunity if it aids in the pursuit of the truth. The Court therefore finds the People did not commit a violation by communicating with Mendiola while he was on the stand. The Court has no reason to believe that the People used the immunity agreement to improperly influence Mendiola's testimony, and Defendant cites no evidence to back up his claim that the People did so.

Defendant argues that the People advised "Mendiola to sue Defendant for money." Mot. for Mistrial at 8. Defendant cites no evidence that the People improperly encouraged

Mendiola to file a civil suit against Defendant. When the Court asked Defendant to explain his contention that the People improperly advised Mendiola to file a civil suit against Defendant, defense counsel stated "we don't know when that advice was given and we don't know when that advice was followed." Digital Recording at 10:16:22–12:36:57 (Jury Trial, Nov. 9, 2022). Defendant insisted that Mendiola recently hired a civil attorney based on the People's advice while simultaneously stating that Defendant did not know if there was a recent conversation between the People and Mendiola. Digital Recording at 1:57:29–2:29:09 (Jury Trial, Nov. 9, 2022). The People stated that it met with Mendiola in June to prepare for trial. Digital Recording at 10:16:22–12:36:57 (Jury Trial, Nov. 9, 2022). Both parties agree that the People have provided Defendant with discovery documenting the June meeting. *Id.* The People stated that during the June meeting, Mendiola expressed interest in victim restitution and other ways to recover damages from Defendant and the People suggested he consult a civil attorney. *Id.* The People represent that it encourages almost every victim to consult a civil attorney about available civil remedies. *Id.*; Exhibit C. Thus, without any evidence that the People encouraged Mendiola to file a civil suit against Defendant after Mendiola's testimony began, the Court finds nothing improper about the People's conduct. The People's statement to Mendiola during the June meeting was not improper, and the Court cannot fault the People for Mendiola's timing in hiring a civil attorney if Defendant offers no evidence that the People are responsible for the timing.

### 3. Mendiola's immunity agreement is permissible.

The Court interprets Defendant's hyperbolic rants about Mendiola's immunity agreement to be a request for the Court the vacate the immunity agreement. Among other critiques, Defendant states "[t]ransactional immunity will include and absolve Mendiola of all

responsibility from even his current felony burglary case." Mot. to Compel at 3. First, Defendant's statement is incorrect; the People have informed the Court and Defendant that the plea negotiations in Mendiola's burglary case do not contain a cooperation term for this case. Digital Recording at 10:16:22–12:36:57 (Jury Trial, Nov. 9, 2022). Defendant also states "[t]here remains no explanation provided to Defendant of how and why the felony burglary settlement and transactional deals came about." Mot. to Compel at 2. The Court reiterates that the People represent that a plea agreement has not been reached in the burglary case, and that none of the plea negotiations in that case discussed a cooperation term for this case. The People stated that, under the immunity agreement, statements Mendiola makes under oath about the burglary case while testifying in this case cannot be used against him but the People are not forgoing prosecution of the burglary case. Digital Recording at 10:16:22–12:36:57 (Jury Trial, Nov. 9, 2022). The Court has no reason to disbelieve the People's representation. The Court reiterates that once Mendiola indicated he was concerned about self-incrimination, the People were free to negotiate an immunity agreement with Mendiola's counsel. Lastly, the Court recalls the People giving an explanation for how the immunity agreement came about during a discussion about the immunity agreement on November 3, 2022. Digital Recording at 11:34:02–11:36:00 (Jury Trial, Nov. 9, 2022). The People stated that it would like Mendiola to testify freely so "we know whether we're prosecuting an innocent man or not" and whether, as Defendant alleges, Mendiola engaged in a conspiracy to extort money from Defendant's family. *Id.*

The Attorney General of Guam is an executive agency, and its duties include to "conduct on behalf of the government of Guam the prosecution of all offenses against the laws of Guam which are prosecuted in any of the courts of Guam, the District Court of Guam, and

any appeals therefrom." 5 G.C.A. § 30109(a). Thus, the Attorney General of Guam is tasked with the enforcement of laws in the territory of Guam. *See id*; 5 G.C.A. § 30109. The conscious selectivity in enforcement of laws is not a constitutional violation unless "the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Oyler v. Boles*, 368 U.S. 448, 456.

The Court notes that Defendant's characterization of Mendiola's immunity agreement as a "sweetheart deal" is not hyperbole; Mendiola has received an extraordinary transactional immunity deal—even if it does not include resolution of his burglary case. The Court acknowledges that such a broad grant of immunity is unusual. However, the executive branch has the power to selectively enforce laws and prosecutors are free to exercise their discretion when granting immunity. The Court does not find anything unconstitutional about this agreement; there are no indications that the People chose to give Mendiola immunity and agree to forgo any prosecution on the basis of race, religion, or any other arbitrary classifications. Defendant's complaints relate to the broadness of the agreement—not a constitutional violation—and the People maintain it is offering broad immunity because Mendiola is the victim in this case and it wants to ensure he can testify truthfully and freely. Digital Recording at 11:34:02–11:36:00 (Jury Trial, Nov. 9, 2022). Consequently, although the immunity agreement may be unconventional, it is not the Court's place to interfere with the function of the executive branch. Furthermore, the Court recalls Defendant encouraging the People to grant Mendiola immunity in the off the record discussion following Mendiola's self-incrimination concerns. The Court also believes that such a broad immunity agreement is just as beneficial to Defendant as the People as it allows Mendiola to testify truthfully without any fear of the consequences. If Defendant's theory that Mendiola is engaged in a conspiracy is

correct, Mendiola is more likely to admit that if he has transactional immunity. As a result, the Court declines to vacate the immunity agreement.

**4. The People have provided Defendant with all discoverable material regarding the immunity agreement.**

Title 8 G.C.A. § 70.10–70.45 constitute Guam's discovery statutes. Title 8 G.C.A. § 70.10(a) states specific material the prosecuting attorney must disclose to the defendant's attorney. Title 8 G.C.A. § 70.15(a) states "[e]xcept as otherwise provided by this Section and §§ 7.20 and 7.30, upon noticed motion by the defendant and a showing of materiality to the preparation of his defense and that the request is reasonable, the court in its discretion may order the prosecuting attorney to disclose to the defendant's attorney any relevant material and information not covered by § 70.10." "The court possesses discretion to order the prosecuting attorney to disclose relevant material and information not covered by section 70.10." *Id.* The Supreme Court of Guam has encouraged a liberal and broad reading of Guam's discovery statutes. *People v. Laxamana*, 2001 Guam 26 ¶ 53.

Defendant requests the Court compel the People to disclose all communications between Mendiola's counsel—APD—and the People regarding negotiations for the immunity agreement and negotiations for a plea agreement in Mendiola's burglary case. As an aside, it is not clear to the Court that plea negotiations of a witness's unrelated case are discoverable. Even so, the People have provided Defendant with the plea offer it sent to APD in Defendant's burglary case. Exhibit A. The People represent that a final plea agreement has not been reached in the burglary case, and that it has paused negotiations in the burglary case while Mendiola is testifying. Digital Recording at 10:16:22–12:36:57 (Jury Trial, Nov. 9, 2022). Accordingly, the Court finds that Defendant is already in possession of all communications

between APD and the People regarding the burglary case—albeit these communications are likely not discoverable.

The Court notes that Defendant is already in possession of the immunity agreement and Defendant is not requesting the immunity agreement itself but the negotiations that led to the immunity agreement. As negotiations of an immunity agreement are not documents enumerated in Guam's discovery statutes as discoverable, Defendant must make a showing that the negotiations are material to the preparation of his defense. "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *People of Guam v. Fisher*, 2002 Guam 2 ¶ 13. (*citing United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988). "A 'reasonable probability' is probability sufficient to undermine confidence in the outcome." *Id.*

Defendant states "[w]ithout a doubt, like the notes leading to a police report, the prosecution's burglary deal and offer of complete immunity, themselves, are both relevant and therefore are any notes or exchanges of information leading up to these two admittedly relevant documents." Mot. to Compel Discovery at 14. The Court agrees that the actual immunity agreement is relevant and material because Defendant may use it to impeach Mendiola's credibility. Yet, the Court struggles to see how the negotiations of the immunity agreement are material, and Defendant does not articulate how the negotiations of the immunity agreement are material. Defendant repeatedly asserts that the negotiations are relevant for impeachment and credibility. Mot. to Compel at 8–15. At the outset, the Court is unclear that negotiations of an immunity agreement—especially when Defendant has the actual immunity agreement—are relevant for impeachment and credibility. Nonetheless, assuming it is, relevancy is a requirement of admissibility, not discoverability. For evidence to be discoverable, it must be

material. The Court cannot conceive of how negotiations of the immunity agreement could change the result of this proceeding. The Court interprets Defendant's argument to be that the negotiations of the immunity agreement enticed Mendiola to change his testimony. First, as Mendiola has not testified following the offer of immunity, Defendant does not know that he will change his testimony and merely poses a hypothetical. Second, the Court is confident that should Mendiola change his testimony, Defendant's seasoned counsel will impeach him using the immunity agreement, police reports, and his prior testimony to show the inconsistencies in his story. The Court does not see how negotiations of the immunity agreement would be necessary. Lastly, the Court believes the actual immunity agreement is sufficient for Defendant to impeach Mendiola's credibility. Defendant has the opportunity to question Mendiola about the immunity agreement, how it has impacted his testimony, and his motivations for entering into the immunity agreement. As there is no legitimate explanation as to how the immunity agreement negotiations could change the result of the proceeding, the Court finds that the immunity agreement negotiations are not discoverable.

### C. The Court finds that Motion for Mistrial and Motion to Compel are frivolous motions.

CVR 7.1(l) states, "[t]he presentation to the court of frivolous motions or oppositions to motions or the failure to comply fully with this Rule subjects the offender at the discretion of the court to the sanctions of General Rule 2.1" General Rule 2.1 states, "[t]he violation of or failure to conform to any of these General Rules, the Guam Rules of Civil Procedure, of the Local Rules of the Superior Court of Guam—Civil Rules shall subject the offending party or counsel to such penalties, including monetary sanctions and/or the imposition of costs and

attorney's fees to opposing counsel, as the Court may deem appropriate under the circumstances."

The Court finds that Motion for Mistrial and Motion to Compel are frivolous motions. While the Court declines to impose sanctions at this time, the Court cautions defense counsel about their conduct. If defense counsel files such motions or makes such oral arguments again, the Court will sanction defense counsel and impose fines. Defendant faults the Court for pausing trial without getting a definitive answer on Mendiola's waiver of his Fifth Amendment rights when defense counsel repeatedly requested the Court give them more time to brief the issue of transactional immunity, emphasized that they thought that November 9, 2022 would be dedicated exclusively to scheduling with the jury, and even stated that Attorney Lujan may have a conflict of interest and could not continue representation in this case. These motions accused Assistant Attorney General Sean Brown of a serious ethical violations—encouraging Mendiola to hire a civil attorney during Mendiola's testimony and engaging in plea negotiations in an unrelated case during Mendiola's testimony—without any basis. These motions contain pages of block quotes with an explanation of how they apply to the facts in this case, suggesting to the Court that defense counsel could not find law directly supporting their contentions and thus knew that their claims were farfetched.

Defense counsel has previously filed two motions to compel discovery for police reports and other documents that do not exist because defense counsel is convinced a "shakedown" and blackmailing occurred. *See* Decision and Order (Motion to Compel Sanctions); *see also* Decision and Order (Defendant's Motion to Compel Discovery; Motion for Continuance). The Court paused trial so defense counsel could consult with the FBI after LeRoy Moore received text messages that defense counsel thought was blackmail, and defense

counsel never informed the Court what became of that consultation. The Court is disconcerted with defense counsel's constant requests to compel discovery that they cannot prove exists, multiple allegations that the People are committing ethical and discovery violations without any evidence, and numerous accusations of a "shakedown" and blackmailing that have no basis in fact.

**CONCLUSION AND ORDER**

For the above reasons, the Court **DENIES** Defendant's Motion for a Mistrial for a Mistrial and **DENIES** Defendant's Motion to Compel.

SO ORDERED, this _____ day of _____ JAN 0 3 2023 _____ 2022.

_____
HONORABLE ALBERTO E. TOLENTINO
Judge, Superior Court of Guam